UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Stephen A. LaBrant et al, | Civil No. 11-3029 (JRT/LIB) |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION** |
| Mortgage Electronic Registration Systems et al, | |
| Defendants, | |

---

This matter came before the undersigned United States Magistrate Judge upon Defendant CitiMortgage and Defendants Mortgage Electronic Registration Systems, Inc., and PennyMac Loan Services, LLC's motions to dismiss. The motions have been referred to the Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1. For the reasons outlined below, the Court recommends that Defendants' motions be granted.

**I.   BACKGROUND**

Plaintiffs brought this action in Minnesota state court alleging the following causes of action: 1) declaratory judgment to enforce an oral agreement; 2) declaratory judgment that Defendants failed to comply with Minn. Stat. Ch. § 580 regarding foreclosure; 3) injunctive relief seeking a tolling or extension of the right to redeem; 4) breach of mortgagee's duty to act fairly and in good faith pursuant to Minn. Stat. § 580.11; 5) negligent misrepresentation; 6) promissory estoppel; and 7) unjust enrichment.  (Compl. [Notice of Removal Docket No. 1, Ex. 1] ¶¶ 43-80).

In May of 2004, Plaintiffs purchased the property located at 16559 Sunset Trail, Pine City, Minnesota, 55053.  (Id. ¶ 8).  They executed a mortgage to the Prime Mortgage

Corporation, which immediately transferred it to CitiMortgage, Inc. (CitiMortgage), and an accompanying note for $247,250.00. (Id. ¶¶ 10-11). Their monthly payment under the note was $1,350.00. (Id. ¶ 12).

Prior to their purchase of the property, Mr. LaBrant was diagnosed with congestive heart failure. (Id. ¶ 13). In the years after the purchase of the house, Plaintiffs encountered financial difficulties and medical bills in excess of $50,000.00. (Id. ¶¶ 17-18). They allege that they preemptively contacted CitiMortgage to request financial assistance, but that CitiMortgage informed them that until they defaulted on the mortgage, nothing could be done. (Id. ¶¶ 19-20).

In February of 2010, Plaintiffs missed their first mortgage payment on the property, which CitiMortgage treated as a default and notified Plaintiffs as such. (Id. ¶¶ 21-22). In the next several months, Plaintiffs attempted to secure a Home Affordable Modification Program (HAMP) loan modification from CitiMortgage. (Id. ¶ 23). Plaintiffs allege that during this process, "CitiMortgage informed Plaintiffs that upon receipt and review of a completed loan modification application CitiMortgage would offer Plaintiffs a modification." (Id. ¶ 24). Plaintiffs also allege that "CitiMortgage continually misplaced Plaintiffs' application materials, requiring Plaintiffs to resubmit information repeatedly." (Id. ¶ 27). Plaintiffs do not allege, however, that any written modification or new agreement in writing was ever entered into with CitiMortgage.

Rather, in May of 2010, CitiMortgage transferred its servicing rights to PennyMac Loan Services, LLC (PennyMac), at which time PennyMac increased the monthly payment due from $1,350.00 to $1,600.00. (Id. ¶¶ 28-29). Though Plaintiffs continued negotiations with PennyMac in an attempt to refinance, "around July and August [of] 2010, [Plaintiffs] were told

that a refinance would be impossible." (Id. ¶ 30). PennyMac also allegedly refused to consider other alternatives to modify the payments due. (Id. ¶¶ 31-32).

Plaintiffs failed to continue making the monthly payments due, and on February 2, 2011, they were served with Notice of Foreclosure Sale. (Id. ¶ 34). On February 23, 2011, pursuant to Minn Stat. § 580.07, subd. 2, Plaintiffs purported to execute and file a Notice of Postponement, hoping to postpone the sale, and provided proof of the Notice to Shapiro & Zielke, LLP (Shapiro)—the attorneys assisting PennyMac in the foreclosure proceedings. (Id. ¶ 35, 36). From April of 2011 to August of 2011, Plaintiffs allege that they made numerous phone calls to PennyMac, who informed them that there was no sheriff's sale scheduled. (Id. ¶ 37). Plaintiffs allege that it was not until August of 2011 that Shapiro notified Plaintiffs that their Notice of Postponement had been denied because the property was not considered a homestead property and that the property had been sold at the original sale date on March 10, 2011. (Id. ¶ 38). Then, on September 1, 2011, although they were already aware that the property was sold, Plaintiffs again contacted PennyMac who informed them that their records showed no sale was scheduled. (Id. ¶ 41).

## II. DEFENDANTS' MOTIONS TO DISMISS

### 1. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. On a motion to dismiss, the Court must "accept all facts pled by the nonmoving party as true and draw all reasonable inferences from the facts in favor of the nonmovant." Waldron v. Boeing Co., 388 F.3d 591, 593 (8th Cir. 2004). Pursuant to Fed. R. Civ. P. 8(a)(2), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This

requires a Plaintiff to allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). The plaintiffs must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 120 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). Plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level." Id. Courts must undertake the "context-specific task" of determining whether the plaintiffs' allegations "nudge" their claims against each defendant "across the line from conceivable to plausible." Iqbal, 120 S.Ct. at 1950-51 (quoting Twombly, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Farnham St. Fin., Inc. v. Pump Media, Inc., No. 09-233 (MJD/FLN), 2009 WL 4672668 at *3 (D. Minn. Dec. 8,2009) (citing Iqbal, 129 S.Ct. at 1949).

Facts pled which "give the defendant fair notice of what the claim is and the grounds upon which it rests" meet the 12(b)(6) standard. Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). When analyzing a complaint on a 12(b)(6) motion to dismiss, courts should read the complaint "as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Braden v. Wal-Mart Stores, Inc., 588 F.3d 585, 594 (8th Cir. 2009). Deciding whether a complaint states a plausible claim for relief is "a context-

specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

### 2. Plaintiffs' Claims for Promissory Estoppel and Declaratory Judgment to Enforce an Oral Promise Fail as a Matter of Law

Plaintiffs' claim of promissory estoppel and claim for declaratory judgment to enforce an alleged oral promise both rest on Plaintiffs' assertion that the parties entered into an oral agreement based on Defendant CitiMortgage's alleged promise that "upon receipt and review of a completed loan modification application CitiMortgage would offer Plaintiffs a modification." (Compl. ¶ 24). Plaintiffs provide no further information as to the terms of the alleged oral agreement such as the new terms of the loan, the new interest rate, the new monthly payment, or any other material terms that would be part of any modern lending or financing agreement. Plaintiffs do not allege that at any time they entered into a written agreement with CitiMortgage. Because "the gravamen" of both these claims rests on the premise that Plaintiffs are "entitled to enforce [an] oral agreement," the Court addresses them collectively. See Brisbin v. Aurora Loan Servs., LLC, No. 10-2130 (RHK/JJK), 2011 WL 1641979, at *3 (D. Minn. May 2, 2011) (finding that the plaintiff's claim to enforce an oral promise postponing a sheriff's sale and the plaintiff's claim for promissory estoppel both fail due to the Minnesota Credit Agreement Statute).[1]

---

[1] The Court notes that the statute on which Plaintiff relies in seeking a declaratory judgment only allows for relief pursuant to a written contract, whereas Plaintiffs here alleged only an oral agreement. See Minn. Stat. § 555.02 ("Any person interested under a deed, will, **written contract,** or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder."); see also Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617 (Minn. 2007) ("[p]arties to a **written** contract 'may have determined any question of construction or validity arising under the contract.'"). Plaintiffs fail to cite to any authority permitting a declaratory action pursuant to Minn. Stat. § 555.02 based on an oral promise. However, because the declaratory judgment claim is essentially the same as Plaintiffs' promissory estoppel claim, the Court addresses the merits of the claim collectively with Plaintiffs' promissory estoppel claim.

Defendant CitiMortgage argues that Plaintiffs' claims fail as a matter of law because Minn. Stat. § 513.33 requires all credit agreements to be in writing. (Mem. Of Law in Supp. of Def. CitiMortgage, Inc.'s Mot. to Dismiss [Docket No. 17] at 4). The Court agrees.

Minn. Stat. § 513.33 provides that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing, expresses consideration, sets forth the relevant terms and conditions, and is signed by the creditor and the debtor." Minn. Stat. § 513.33, subd. 2. It also provides that "the agreement by a creditor to take certain actions, such as entering into a new credit agreement, forbearing from exercising remedies under prior credit agreements, or extending installments due under prior credit agreements" does not "give rise to a claim that a new credit agreement is created, unless the agreement satisfies the requirements of subdivision. 2." Minn. Stat. § 513.33, subd. 3.[2]

Under the statute, a credit agreement is "an agreement to lend or forbear repayment of money, goods, or things in action, to otherwise extend credit, or to make any other financial accommodation." Minn. Stat. § 513.33, subd. 1(1). This Court has already held that an alleged loan modification agreement constitutes a credit agreement within the meaning of Minn. Stat. § 513.33. See Myrlie v. Countrywide Bank, 775 F. Supp. 2d 1100, 1109 (D. Minn. 2011); see also Tharaldson v. Ocwen Loan Servicing, LLC, 2011 WL 6957555, at *4 (D. Minn. Dec. 15, 2011) (explaining that plaintiffs sought "to enforce an alleged oral loan modification," and holding that "[a] loan modification constitutes a credit agreement," which barred their claim pursuant to Minn. Stat. § 513.33); Sovis v. Bank of New York Mellon, No. 11-2253 (DWF/LIB), 2012 WL 733758, at *3 (D. Minn. Mar. 6, 2012) (finding that a loan modification constitutes a credit agreement and that to be enforceable, "the modification must be in writing and signed by the

---

[2] While the statute was originally enacted specifically "to protect lenders from having to litigate claims of oral promises to renew agricultural loans," Rural Am. Bank of Greenwald v. Herickhoff, 485 N.W.2d 702, 705 (Minn. 1992), its plain language does not limit its application only to agricultural loans.

creditor and the debtor"). Myrlie involved very similar facts to the present case, in which the plaintiff alleged that the defendant had orally agreed to modify the terms of the credit agreement. 775 F. Supp. 2d at 1105-06.  Citing Grueling v. Wells Fargo Home Mortgage, Inc., 690 N.W.2d 757, 761 (Minn. Ct. App. 2005), the Court held that the plaintiff's alleged oral modification constituted a credit agreement within the meaning of § 513.33, and awarded summary judgment for the defendant on the plaintiff's promissory estoppel claim.  Myrlie, 775 F. Supp. 2d at 1108-09.

In Olivares v. PNC Bank, No. 11-1626 (ADM/JJK), 2011 WL 4860167, at *5 (D. Minn. Oct. 13, 2011), this Court stated that "Minnesota courts have held that plaintiffs are barred from asserting a promissory estoppel claim where they lack a sufficient writing under Minn. Stat. § 513.33, subd. 2."  If plaintiffs could assert promissory estoppel claims in such situations, they "could make an easy end-run around the Minnesota Credit Agreement Statute."  Brisbin, 2011 WL 1641979, at *3.  The Court's holdings in Myrlie, Tharaldson, Olivares, and Sovis are on point in this case, and the Court finds that Plaintiffs' cannot assert a promissory estoppel claim based on their alleged oral modification agreement.

Plaintiffs attempt to circumvent the holdings of Myrlie, Tharaldson, Olivares, and Sovis by making a hyper-technical distinction that the agreement at issue was not a credit agreement because it was merely an agreement to modify a credit agreement—essentially, a modification to a credit agreement.  (See Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss [Docket No. 24] at 14) ("This was a modification of an existing credit agreement.").  However, the Court in Brisbin rejected a similar attempt "to avoid the statute's reach" and stated that "the statute reaches not only 'credit agreements' themselves, but also any 'agreement by a creditor to take certain actions, such as . . . forbearing from exercising remedies under prior credit agreements.'"

2011 WL 1641979, at *3. Plaintiffs' attempted distinction that this is merely a modification to a credit agreement, rather than a new credit agreement, is defeated by the "long recognized [rule] that 'a contract subject to the statute of frauds cannot be modified orally.'" Id. at *3 (quoting Rooney v. Dayton-Hudson Corp., 246 N.W.2d 170, 175 (Minn. 1976)); see also Massey v. Mortg. Elec. Registration Sys., Inc., No. 09-1144 (RHK/JSM), 2010 WL 2104549, at *2 (D. Minn. May 25, 2010) (finding that a modification to an agreement subject to Minn. Stat. § 513.33 would have to be in writing to be enforceable); Odens Family Properties, LLC v. Twin Cities Stores, Inc., 393 F. Supp.2d 824, 829 (D. Minn. 2005) ("[a]ny modification of a contract falling under the statute of frauds must be in writing.").

Plaintiffs make no other attempt to distinguish Myrlie, Tharaldson, and Sovis, but they argue that Grueling permits such oral modifications when the "promise concern[s] **additional** terms alleged to be part of an existing written transaction." 690 N.W.2d at 762 (emphasis added). This purported holding, however, is inapposite to the facts of the present case. Plaintiffs have not alleged that they were promised additional terms; rather their Complaint effectively alleges that CitiMortgage promised to modify the terms of the existing credit agreement. Modification of an existing term is not an additional term. Though Plaintiffs have failed to specifically plead the actual terms of the alleged modification to their credit agreement in their Complaint, from the briefing and argument it seems apparent that the primary modification would have been to lower the monthly payment amount; such a change is not an additional term but only a modification of an existing term. As the Minnesota Court of Appeals in Grueling discussed, where the plaintiff asserts "an agreement to enter into a new credit agreement," the statute (Minn. Stat. § 513.33) prohibits a promissory estoppel claim. 690 N.W.2d at 762. The

same is true for the modification that would alter the existing terms under the credit agreement. See Brisbin, 2011 WL 1641979, at *3. Therefore, Plaintiffs' argument must fail.

Plaintiffs also argued, in their responsive memorandum, but did not allege in their Complaint, that equitable estoppel prevents Defendants from now invoking Minn. Stat. § 513.33. (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss [Docket No. 24] at 15). In support of this argument, Plaintiffs rely on Brickwell Cmty. Bank v. Wycliff Assocs. II, LLC, 2011 WL 1237524, at *5-6 (Minn. Ct. App. Apr. 5, 2011). Plaintiffs' reliance on Brickwell, however, is misplaced.

> The elements of equitable estoppel are as follows:
>
> 1) There must be conduct acts, language or silence amounting to a representation or a concealment of material facts. 2) These facts must be known to the party estopped at the time of his said conduct, or at least the circumstances must be such that knowledge of them is necessarily imputed to him. 3) The truth concerning these facts must be unknown to the other party claiming the benefit of the estoppel, at the time when such conduct was done, and at the time when it was acted upon by him. 4) The conduct must be done with the intention, or at least with the expectation, that it will be acted upon by the other party, or under such circumstances that it is both natural and probable that it will be so acted upon. 5) The conduct must be relied upon by the other party, and, thus relying, he must be led to act upon it. 6) He must in fact act upon it in such a manner as to change his position for the worse, in other words, he must so act that he would suffer a loss if he were compelled to surrender or forego or alter what he has done by reason of the first party being permitted to repudiate his conduct and to assert rights inconsistent with it.

Lunning v. Land O'Lakes, 303 N.W.2d 452, 457 (Minn. 1980).

In Brickwell, the state appellate court reversed a summary judgment ruling that had dismissed an equitable estoppel claim and emphasized that the defendant in that case had made representations about "its ability to advance timely additional credit . . . concealing the arguably material facts that it had reached the limit of loans it could extend to appellants without a lending participant and had been unable to find a lending participant." 2011 WL 1237524, at *6. No

such facts are alleged in this case. Plaintiffs allege that CitiMortgage promised to modify Plaintiffs' existing credit agreement. They do not allege that CitiMortgage made representations that tended to conceal any material fact.

Furthermore, Plaintiffs' argument regarding the fifth element of their equitable estoppel assertion, i.e., that they relied on the representation to pay off other debts, also misses the mark. Plaintiffs do not allege in their Complaint that CitiMortgage ever represented to them that they should stop making payments on the mortgage. (See Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 14) ("It was likewise **not an agreement to forbear repayment**, given that Plaintiffs would have been required to **make the new payment immediately**."). Though they fail to allege the specific terms of the claimed promise to modify, as already noted the alleged promise was that a reduction in the monthly payment amount would be forthcoming. (See Compl. ¶ 25) ("[b]ased upon representations made by CitiMortgage, Plaintiffs loan modification would represent a reduction in Plaintiffs monthly mortgage payments."). It is entirely unclear why such an alleged promise of a slightly lower monthly payment could reasonably be construed to entitle Plaintiffs to cease making monthly payments all together on the mortgage, and "use the relief from paying the mortgage to catch up on other financial obligations or to pay off other debt." (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 18). Importantly, Plaintiffs do not allege that they relied on the purported promise to modify and thereafter proceeded to make all the "new," lower, payments under the alleged modification. If Plaintiffs were promised a lower payment, and thereafter failed to ever make any of the purported lower payments at all, they could not have reasonably relied on the promise of a lower monthly payment amount as a reason to stop all payments since they surely knew they were not fulfilling their obligation under

either the existing or allegedly modified credit agreement in any event. Equitable estoppel does not preclude Defendants' invocation of Minn. Stat. § 513.33 in the present case.

Notwithstanding the foregoing analysis, even assuming Plaintiffs' promissory estoppel claim was not barred by Minn. Stat. § 513.33, Plaintiffs have failed to allege sufficient facts to avoid dismissal of their claim under Rule 12(b)(6).

Promissory estoppel is an equitable doctrine that requires the following elements to be proven: "(1) a clear and definite promise; 2) the promisor intended to induce reliance and such reliance occurred; 3) the promise must be enforced to prevent injustice." Greuling, 690 N.W.2d at 761. In this case, Plaintiffs have merely alleged that Defendant CitiMortgage promised that "upon receipt and review of a completed loan modification application CitiMortgage would offer Plaintiffs a modification." Even if true, such a promise—without any further factual detail regarding which terms, and to what extent, would be modified under the alleged promise—cannot amount to a clear and definite promise that permits a promissory estoppel claim. See Myrlie, 775 F. Supp.2d at 1107. Furthermore, Plaintiffs have not alleged in anyway how they changed their position in reliance of CitiMortgage's alleged promise. Even presuming the alleged modification would have permitted Plaintiffs to lower their monthly payment—Plaintiffs do not allege in their Complaint that CitiMortgage promised to forgive the principal loan amount due or forbear from collecting any monthly payment amounts for a specified period of time. As such, Plaintiffs could not have relied on the alleged promise of a lower payment to stop making all their monthly payments entirely. Although Plaintiffs generally allege that they have suffered in excess of $50,000.00 in damages, (Compl. ¶ 73), they have provided no factual basis for how, if at all, these alleged damages arise because they detrimentally changed their position in reliance on CitiMortgage's alleged promise of lower monthly payments. Thus, Minn. Stat. § 513.33

notwithstanding, Plaintiffs have also failed to allege sufficient facts to even establish the elements of a promissory estoppel claim. See Tharaldson, 2011 WL 6957555, at *4 (dismissing promissory estoppel claim).

For these reasons, the Court finds that Plaintiffs' promissory estoppel claim is barred by Minn. Stat. § 513.33 and that Defendants are not equitably estopped from invoking Minn. Stat. § 513.33. The Plaintiffs' claim seeking a declaratory judgment as to the terms of the oral promise to modify their existing credit agreement should also be dismissed.

### 3. Plaintiffs' Negligent Misrepresentation Claim Fails to Allege Sufficient Facts

Plaintiffs' Complaint only generally alleges that "Defendants in the course of their business supplied information to Plaintiffs for their guidance in a business transaction as set forth above." (Compl. ¶ 63). However, the Complaint fails to identify the specific information that Plaintiffs allege constituted a negligent misrepresentation. Thus, it is less than clear from reading the Complaint which information Plaintiffs allege was a misrepresentation, and more importantly, which Defendant allegedly provided the misrepresentation. In their memorandum in opposition to the motion to dismiss, Plaintiffs argue that "Defendants supplied Plaintiffs with false information that a permanent modification of their mortgage loan was imminent." (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 22). On this basis, the Court presumes that Plaintiffs' negligent misrepresentation claim is based on the alleged representations made by CitiMortgage that "upon receipt and review of a completed loan modification application CitiMortgage would offer Plaintiffs a modification," and that "[u]pon completion of the loan modification review, Plaintiffs would be offered a permanent loan modification." (See Compl. ¶¶ 24, 26).

> Under Minnesota law, a claim for negligent misrepresentation will lie when:
>
> 1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, 2) the person supplies false information for the guidance of others in their business transactions, 3) another justifiably relies on the information, and 4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information.

Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009). Plaintiffs offer only one argument that CitiMortgage provided false information when it allegedly represented that upon Plaintiffs' completion of the loan modification application Plaintiffs would be offered a permanent loan modification: "[t]hese representations were false." (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 22). Plaintiffs have plead no facts in their Complaint to demonstrate that, at the time the representations were allegedly made, the representations were false or that Defendant CitiMortage should have been aware that they were false—Plaintiffs' argument appears to depend on the fact that the representations never materialized; however, this is insufficient to state a claim for negligent misrepresentation. See McCord v. Minnesota Mut. Life Ins. Co., 138 F. Supp.2d 1180, 1192 (D. Minn. 2001) ("[n]egligent misrepresentation cannot be predicated upon unfulfilled promises or statements as to future events."); Pennington v. HSBC Bank USA, No. A-10-CA-785 LY, 2011 WL 6739609, at *9 (W.D. Tex. Dec. 22, 2011) ("[t]o establish a negligent misrepresentation claim, the plaintiff must also prove that the defendant misrepresented an existing fact rather than a promise of future conduct.") (internal quotation marks omitted); City of Warrensburg, Mo v. RCA Corp, 571 F. Supp. 743, 754 (W.D. Mo. 1983) ("there can be no cause of action for negligent misrepresentation of a maker's own intention to perform an agreement.").

Moreover, as already discussed above, Plaintiffs do not allege that CitiMortgage directed or represented to them that they should cease making all payments under the mortgage entirely,

or that they ever made any of the alleged modified lower payments. Thus, even if the representations Plaintiffs allege were in fact made—that upon completion of the loan modification application a permanent modification of their mortgage loan was imminent — Plaintiffs could not reasonably have relied on it to cease making all payments entirely. Their argument in opposition to the motion to dismiss that CitiMortgage did not "communicate that cessation of mortgage payments or submission of only modification payments created a significant risk of foreclosure" is unpersuasive. See Brisbin, 2011 WL 1641979, at *6 (dismissing a negligent misrepresentation claim because the plaintiff failed to adduce sufficient evidence, rather than speculation, that her reliance on the promise was detrimental to her); see also Tharaldson, 2011 WL 697555, at *5 (dismissing plaintiffs' negligent misrepresentation claim because plaintiffs did not allege that "they could have made their original monthly payments under the Mortgage").[3]

---

[3] Defendant CitiMortgage also argues that the negligent misrepresentation claim fails against it because it is barred by Minn. Stat. § 513.33. (Mem. Of Law in Supp. of Def. CitiMortgage, Inc.'s Mot. to Dismiss at 8). It cites Greuling for the proposition that a debtor's negligent misrepresentation claim is barred by Minn. Stat. § 513.33. (Id.) In Greuling, the court independently analyzed the plaintiff's negligent misrepresentation claim and concluded that summary judgment was appropriate—it did not, however, specifically hold that the negligent misrepresentation claim was barred by Minn. Stat. § 513.33. See Greuling, 690 N.W.2d at 760-61. In discussing the plaintiff's promissory estoppel claim, and quoting Minn. Stat. § 513.33, subd. 2, the court explained that "[a] debtor may not maintain an action on a credit agreement unless the agreement is in writing . . ." and that "claims on agreements falling under Minn. Stat. § 513.33 fail as a matter of law if the agreement is not in writing." Id. at 761-62. Although a claim of negligent misrepresentation may be premised not on an alleged agreement but rather on an independent tort, see Valspar, 764 N.W.2d at 369, as pled in Plaintiffs' Complaint now before this Court, the relief Plaintiffs are seeking by asserting their negligent misrepresentation claim is, essentially, to enforce the alleged oral promise to modify their existing credit agreement. Therefore, the Court agrees with Defendant CitiMortgage that, in **this** case, Plaintiffs are merely attempting to make an end-run yet again around the statute by asserting a tort claim which seeks the same relief as the promissory estoppel claim, which is barred by Minn. Stat. § 513.33. See Foster v. Bank One Texas N.A., 54 Fed. Appx. 592, at *3 (5th Cir. 2002) (explaining that courts look with "disfavor on litigants seeking to bypass the statute of frauds," particularly where the negligent misrepresentation "has as its nucleus [an] unenforceable oral contract," and finding that the statute of frauds bars plaintiff's claim of negligent misrepresentation because it was "based on [plaintiff's] oral promises.") (internal quotation marks and citations omitted); see also Carlson v. JPMorgan Chase Bank, N.A., No. 2:11CV606 DS, 2012 WL 177848, at *3 (D. Utah Jan. 20, 2012) ("the court finds, that the statute of frauds precludes not only plaintiff's breach of oral contract claim, but it also bars plaintiff's related claims for negligent misrepresentation . . . ."); Barter v. U.S. Bank, N.A., No. 10-11476, 2011 WL 124502, at *5 (E.D. Mich. Jan. 13, 2011) (dismissing plaintiff's negligent misrepresentation claim because the "alleged negligent misrepresentations made by Defendants are reliant on enforcement of the terms of the oral promises").

For these reasons, the Court finds that Plaintiffs' negligent misrepresentation claim should also be dismissed.[4]

### 4. Plaintiffs' Unjust Enrichment Claim Fails to Allege Sufficient Facts

"To prevail on a claim for unjust enrichment, Plaintiffs will have to prove that Defendants received something of value, which they were not entitled to, under circumstances that would make it unjust to permit its retention." Tharaldson, 2011 WL 6957555, at *6.

In their memorandum in opposition to the motion to dismiss, Plaintiffs simply cite and argue the general elements for an unjust enrichment claim, but they offer no specific facts or reasoning whatsoever as to why they are entitled to such relief in the present case. Similarly, in their Complaint, aside from the cursory allegation that Defendants have received payments from Plaintiffs, they offer no specific factual allegations as to why such a receipt of payments was "unlawful" or why Defendants were not otherwise entitled to the monthly mortgage payments.

Merely alleging that a party has received a voluntarily submitted payment—and very little more—is insufficient to maintain an unjust enrichment claim. Plaintiffs offer no specific factual allegations in their Complaint whatsoever that would support a plausible inference that the Defendants' receipt, and retention, of any monthly mortgage loan payments was improper, much less unlawful or unjust.

---

[4] Furthermore, "[u]nder Minnesota law, any allegation of misrepresentation, whether labeled as a claim of fraudulent misrepresentation or negligent misrepresentation, is considered an allegation of fraud which must be pled with particularity." Trooien v. Mansour, 608 F.3d 1020, 1028 (8th Cir. 2010). This requires that the complaint include "such matters as the time, place and contents of false representations." Id. (quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982)). Plaintiffs have failed not only to clearly allege the particular false representation, but have also failed to allege at what time and place it was made. Thus, they have also largely failed to satisfy their burden to plead their negligent misrepresentation claim with the necessary particularity. See Sovis, 2012 WL 733758, at *4 (dismissing without prejudice a claim for negligent misrepresentation because the plaintiff failed to provide facts to support the purported representations and "failed to sufficiently allege facts to show justifiable reliance or that Defendants' alleged failure to follow through on their alleged promises was the proximate cause of foreclosure or other damages to Plaintiff").

### 5. Plaintiffs' Claims that Defendants Violated Minn. Stat. § 580.11 Fail as a Matter of Law

In Counts II and IV, Plaintiffs allege respectively that Defendants failed to comply with Minn. Stat. § 580 governing foreclosure by advertisement, and that they breached an alleged fiduciary duty owed pursuant to Minn. Stat. § 580.11. (Compl. ¶¶ 48-53, 58-61). Because Defendant PennyMac is the lender that actually foreclosed on Plaintiffs' mortgage and Defendant Mortgage Electronic Registration Systems, Inc. (MERS) is the mortgagee of record, the Court presumes that Plaintiffs' allegation that Defendant failed to comply with the foreclosure by advertisement statute is directed only at Defendants PennyMac and MERS. (See Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 19) (directing their arguments toward PennyMac and MERS). At the outset, the Court finds that Plaintiffs' allegations in Count II are entirely without a factual basis. Plaintiffs' only direct allegation that PennyMac failed to comply with the foreclosure by advertisement statute is that PennyMac "failed to provide proper notice of foreclosure to Plaintiffs." (Compl. ¶ 51). To resolve this claim, the Court need not look any further than the paucity of factual pleadings in the Plaintiffs' own Complaint. In fact, the Complaint itself provides to the contrary: "Plaintiffs were served with Notice of Foreclosure Sale on February 2, 2011." (Id. ¶ 34). Plaintiffs' Complaint makes no further factual allegations whatsoever regarding any alleged deficiency with the notice of foreclosure they received. As such, Count II of Plaintiffs' Complaint cannot survive the Rule 12(b)(6) motion, and it should be dismissed.

With respect to Count IV, Plaintiffs argue that Minn. Stat. § 580.11 imposes "upon mortgagees a fiduciary duty to act fairly and to deal in good faith with the mortgagor when foreclosing." (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 18-19). They allege

that PennyMac and MERS breached that duty "by failing to give Plaintiffs an opportunity to cure [Plaintiffs'] default." (Compl. ¶ 60). Plaintiffs' apparent basis for this claim is that they filed a Notice of Postponement, which Plaintiffs believe required Defendants PennyMac and MERS to postpone the foreclosure. (See Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 20) ("[t]he argument is simply that the Notice of Postponement was effective and thus, the foreclosure was invalid.").[5]

Contrary to Plaintiffs' argument, the Court finds that Minn. Stat. § 580.11 does not impose a general fiduciary duty upon a mortgagee. The statute provides that "[t]he mortgagee, the mortgagee's assignee, or the legal representative of either or both, may fairly and in good faith purchase the premises so advertised, or any part thereof, at such sale." Minn. Stat. § 580.11. In Cox v. Mortg. Elect. Registration Sys., Inc., 794 F. Supp. 2d 1060, 1065 (D. Minn. 2011), this Court dismissed the same breach of a mortgagee duty claim based on Minn. Stat. § 580.11, which Plaintiffs now make in the present case, when it found that "the statute itself imposes no fiduciary duty on the mortgagee nor does it concern a mortgagee's actions prior to

---

[5] Although not alleged in Counts II or IV of their Complaint, in their memorandum in opposition to the motions to dismiss, Plaintiffs make the argument, that the foreclosure was improper because Plaintiffs provided Defendants with a notice of postponement. (See Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 19-21). Minn. Stat. § 580.07, subd. 2 provides that a mortgagor or owner may postpone the sale of a property if "all or a part of the property to be sold **is** classified as homestead under section 273.124 and contains one to four dwelling units." (emphasis added). Minn. Stat. § 273.124, subd. 13 requires that a "person who meets the homestead requirements under subdivision 1 must file a homestead application with the county assessor to initially obtain homestead classification." Plaintiffs do not allege that the property at issue was classified as a homestead at the time they claim to have provided a notice of postponement to Defendants; rather, they only allege that Mr. LaBrant happened to begin to live on the property after separating from his wife. Indeed, the public tax and real property records submitted by PennyMac, which the Court may consider, see Great Plains Trust Co. v. Union Pacific R. Co., 492 F.3d 986, 990 (8th Cir. 2007), demonstrate that this property has not been classified as a homestead property. (Aff. of Benjamin E. Gurstelle [Docket No. 21], Ex. 1 at 2, Ex. 2 at 2-3). Minn. Stat. § 580.07, subd. 2 provides that the property must be classified as a homestead, not that it might at some later date become classified as a homestead. Plaintiffs fail to cite to any authority holding to the contrary. Therefore, to the extent that Plaintiffs argue that their notice of postponement invalidated the foreclosure proceeding, the argument must fail as it was not the foreclosure that was invalid because it was not postponed, but rather, their attempted notice of postponement that was itself invalid.

foreclosure." See also Scott v. Wells Fargo Bank, N.A., No. 10-3368, 2011 WL 381766, at *3-4 (D. Minn. Feb. 2011).

In support of their argument, Plaintiffs cite Sprague Nat'l Bank v. Dotty, 415 N.W.2d 725 (Minn. Ct. App. 1987) for the proposition that a mortgagee has a general fiduciary duty to act fairly and in good faith during the foreclosure process. However, Plaintiffs' lead attorney, made this precise argument regarding Sprague in both Scott and Cox, and the Court considered and rejected the argument both times.[6]  See Scott, 2011 WL 381766, at *4; Cox, 794 F. Supp. 2d at 1065.

For these reasons, the Court recommends that Plaintiffs claims based on Minn. Stat. § 580 be dismissed.

### 6. Plaintiffs' Claim for Injunctive Relief Fails to State a Claim

In Count III, Plaintiffs seek "temporary and permanent injunctive relief against Defendants tolling and extending Plaintiffs' right to redeem the Property pending a full and final decision on the merits of Plaintiffs' Verified Complaint."  (Compl. ¶ 57).  At the hearing on the present motions to dismiss, Plaintiffs' counsel conceded that an injunction is a remedy, not a cause of action.  See Henke v. Arco Midcon, LLC, 750 F. Supp.2d 1052, 1059-60 (E.D. Mo. 2010) ("[i]njunctive relief, however, is a remedy, not an independent cause of action.").  As such, dismissal of this claim is appropriate.  See Motley v. Homecomings Fin., LLC, 557 F.

---

[6] At the hearing and in their memorandum, Plaintiffs asserted that they "were told upon delivering the Notice of Postponement to the foreclosing attorneys that it was effective and that they would receive a new Notice of Foreclosure Sale in about five (5) months time." (Pls.' Mem. of Law in Opp'n to Defs.' Mots. to Dismiss at 20). They argue that by providing such a representation and "by participating in the foreclosure sale," at best, Defendants were "delivering mixed messages to Plaintiffs and, at worst, misrepresenting notice of the foreclosure sale." (Id. at 21). General assertions for delivery of "mixed messages" do not provide a cause of action under Minn. Stat. § 580.11, as more full described above. To the extent that Plaintiffs might even be considered here to make a misrepresentation argument, which they have not alleged in Count IV of their Complaint, the Court finds such an argument unfounded. Even if such a representation was made, Plaintiffs could not have placed any reliance on it, since Plaintiffs knew that the Notice of Postponement required the property at issue to be homesteaded, which it plainly was not at the time they served the ineffective Notice of Postponement. See Minn. Stat. § 580.07, subd. 2; § 273.124, subd. 13 ("[a] person who meets the homestead requirements under subdivision 1 must file a homestead application with the county assessor to initially obtain homestead classification.").

Supp.2d 1005, 1014 (D. Minn. 2008) (dismissing claims for injunctive relief as separate claims but allowing the parties to "seek such equitable remedies in connection with the other claims in the Complaint" because the parties conceded that the claims were "merely remedies, not separate causes of action").

### III.   CONCLUSION

For all the reasons more fully described above, the Court finds that Plaintiffs' claims should be dismissed and recommends granting all Defendants' motions.  Furthermore, because the Court finds that Plaintiffs' claims for promissory estoppel and negligent misrepresentation are barred by Minn. Stat. § 513.33, and Plaintiffs' claims for breach of Minn. Stat. § 580 are without a legal basis, thus making it futile to allow Plaintiffs leave to amend their Complaint, the Court recommends that Plaintiffs' claims be dismissed with prejudice.  See Ikechi v. Verizon Wireless, No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5 n.6 (D. Minn. Apr. 7, 2011) ("[a] Court may, however, dismiss claims with prejudice if re-pleading would be futile"); Allen v. Bank of America Corp, No. 10-4205 (MJD/JSM), 2011 WL 3837150, at *10 (D. Minn. Jul. 22, 2011) (dismissing with prejudice claims where amendment would be futile).

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Defendants' motions to dismiss [Docket Nos. 15 and 19] be **GRANTED** with prejudice.

Dated: March 19, 2012                                                    s/Leo I. Brisbois
                                                                        LEO I. BRISBOIS
                                                                        United States Magistrate Judge

**N O T I C E**

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by April 2, 2012**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.